UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, acting through the United States Department of Agriculture | CIVIL NO. |
| Plaintiff | Foreclosure of Mortgage |
| v. | |
| WILFREDO LÓPEZ CALCERRADA, AWILDA RAMOS VÁZQUEZ AND THE CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM; UNITED STATES OF AMERICA | |
| Defendants | |

**COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW the United States of America -acting by the United States Department of Agriculture- through the undersigned attorney, who respectfully alleges and prays as follows:

1.  Jurisdiction of this action is conferred on this Court by 28 U.S.C. Section 1345.

2.  Plaintiff, United States of America, is acting through the United States Department of Agriculture, which is organized and existing under the provisions of the Consolidated Farm and Farm Service Agency Act, 7 U.S.C. §1921 et seq. Plaintiff is the owner and holder of one (1) promissory note that affects the two (2) properties described further below.

3.  The promissory note mentioned before is for the amount of **$74,000.00,** with annual interest of 6.625%, subscribed on February 18, 1982. *See Exhibit 1.*

4.  For the purpose of securing the payment of said promissory note, a voluntary mortgage was executed on the same date, in favor of the plaintiff, under the terms and conditions stipulated and agreed therein, through Deed No. 29. *See Exhibit 2.*

5.      According to the Property Registry, defendants are the owners of record of the real estate

properties subject of this case. Said properties are described -as they were recorded in

Spanish- as follows:

>   A. RÚSTICA: Radicada en el barrio Guerrero de Aguadilla, Puerto Rico,
>   compuesta originalmente de 20.61 cuerdas, reducida en la actualidad a dieciocho
>   cuerdas con sesenta y un céntimos de terreno, equivalentes a siete hectáreas,
>   treinta y una áreas, cuarenta y cuatro centiáreas y cincuenta y seis miliáreas, en
>   lindes al NORTE, con María Rodríguez antes, hoy la Sucesión de Emilio Cerezo;
>   al SUR, con Felina Rodríguez antes, hoy Carlos Cordero; al ESTE, con Francisco
>   Bravo antes, hoy Carlos Cordero; y al OESTE, antes Rosario Rodríguez, después
>   Sucesión de Rafael Feliciano y hoy con María del Rosario Bravo, Francisco
>   Crespo, Cándido Cortés y Juan López.
>
>   Property 8,660, recorded at page 22 of volume 211, Property Registry of Aguadilla,
>   Puerto Rico.
>
>   *See Title Search attached as Exhibit 3.*
>
>   B. RÚSTICA: Radicada en el barrio Guerrero de Aguadilla, Puerto Rico,
>   compuesta de cinco cuerdas de terreno, equivalentes a una hectárea, noventa y
>   seis áreas, cincuenta y una centiáreas y noventa y cinco miliáreas, en lindes al
>   NORTE, con Eduardo Morales, antes, hoy con Benito Cortés; al SUR, con Agustín
>   Rodríguez, antes, hoy con Juan López; al ESTE, con Isolina Rodríguez; y al
>   OESTE, con un camino vecinal.
>
>   Property 8,861, recorded at page 29 of volume 211, Property Registry of Aguadilla,
>   Puerto Rico.
>
>   *See Title Search attached as Exhibit 4.*

6.      The title searches attached to this complaint confirm the registration of the mortgage lien

that secure the loan obligation between the plaintiff and the defendants.  *See Exhibits 3

and 4.*

7.      It was expressly stipulated in the notes evidencing the indebtedness that default in the

payment of any part of the covenant or agreement therein contained will authorize the

plaintiff, as payee of said notes, to declare due and payable the total amount of the

indebtedness evidenced by said notes and proceed with the execution and/or foreclosure

of the mortgages.

8.   The defendants herein, jointly and severally, have failed to comply with terms of the mortgage contracts by failing to pay the installments due on all notes until the present day, and that after declaring all the indebtedness due and payable, defendants owe to the plaintiff, according to the Certification of Indebtedness included herein as *Exhibit 5*, the following amounts:

   a) On the $74,000 Note:

   1) The sum of $74,000.00, of principal;

   2) The sum of $136,010.15, of interest accrued as of September 16, 2020, and thereafter until its full and total payment, which interest amount increases at the daily rate of $13.4315;

   3) Plus, insurance premium, taxes, advances, late charges, costs, court costs expenses, disbursements and attorney's fees guaranteed under the mortgage obligation.

9.   The indebtedness evidenced by the aforementioned note is secured by the mortgage over the properties described in this complaint.

10.   Defendants are not currently active in the military service for the United States. *See Exhibit 6.*

11.   The real estate properties mentioned before are subject to the following liens in the rank indicated:

   (A)   Property 8,660:

   1)   Recorded liens with preference or priority over mortgage herein included:

   -None.

   2)   Junior Liens with inferior rank or priority over mortgage herein included:

   -None.

(B)     Property 8,661:

    1)  Recorded liens with preference or priority over mortgage herein included:

        -None.

    2)  Junior Liens with inferior rank or priority over mortgage herein included:

        a.  FEDERAL TAX LIEN: Entry 2016-003153-FED, Karibe System, notification number 201486016, against Wilfredo López/Colors Paint, Social Security number xxx-xx-8428, in the amount of $26,400.79, dated March 23, 2016.

        b.  FEDERAL TAX LIEN: Entry 2016-004741-FED, Karibe System, notification number 210527016, against Wilfredo López/Colors Paint, Social Security number xxx-xx-8428, in the amount of $2,004.48, dated May 11, 2016.

        c.  FEDERAL TAX LIEN: Entry 2018-009498-FED, Karibe System, notification number 329350218, against Wilfredo López/Colors Paint, Social Security number xxx-xx-8428, in the amount of $177,987.17, dated November 2, 2018. There is no warranty about the identity of the owner and the foreclosure subject being the same person.

12.     The United States of America is included as a party of interest in this action because, according to the Title Search for Property #8,661, there are three Federal Tax Liens affecting it. *See Exhibit 4.*

**VERIFICATION**

I, JACQUELINE LAZÚ LABOY, of legal age, married, executive and resident of Humacao, Puerto Rico, in my capacity as Acting Director for the Loan Resolution Task Force of the Farm Service Agency, San Juan, Puerto Rico, under the penalty of perjury, as permitted by Section 1746 of Title 28, United States Code, declare and certify:

    1)  My name and personal circumstances are stated above;

    2)  I subscribed this complaint as the legal and authorized representative of the plaintiff;

    3)  Plaintiff has a legitimate cause of action against the defendants above named which

warrants the granting of relief requested in said complaint;

4)   Defendants are a necessary and legitimate party to this action in view of the fact that they originated or assumed the mortgage obligation subject of this foreclosure, or bought the property subject to said mortgage;

5)   From the information available to me and based upon the documents in the Farm Service Agency, it appears that defendants have not been declared incompetent by a court of justice with authority to make such a declaration;

6)   I have carefully read the allegations contained in this complaint and they are true and correct to the best of my knowledge and to the documents contained in the files of the Farm Service Agency;

7)   I have carefully examined the Exhibits included to this complaint which are true and correct copies of the originals. The mortgage deed has been duly recorded in the Property Registry.

I make the foregoing declaration under penalty of perjury, as permitted under Section 1746 of Title 28, United States Code.

In San Juan, Puerto Rico, this 21 day of October, 2020.



JACQUELINE LAZÚ LABOY

PRAYER

WHEREFORE, the plaintiff demands judgment as follows:

a)   That defendant's party pays unto the plaintiff the amounts claimed on this complaint;

b)   Or in default thereof that all legal right, title and interest which the defendants may have in the property described in this complaint and any building or improvement thereon be sold

at public auction and that the monies due to the United States as alleged in the preceding paragraphs be paid out of the proceeds of said sale;

      c)      That the defendants and all persons claiming or who may claim by, from or under them be absolutely barred and foreclosed from all rights and equity of redemption in and to said property;

      d)      That if the proceeds of such sale be insufficient to cover the amounts specified under paragraph 8 of this prayer, said defendant be adjudged to pay to the United States the total amount of money remaining unsatisfied to said paragraph (a) of this prayer, and execution be issued forthwith against said defendants for the payment of said deficiencies against any of the properties of said defendants;

      e)      That if the proceeds of said sale exceed the sum of money to be paid to the United States as aforesaid, any such excess be deposited with the Clerk of this Court subject to further orders from the Court;

      f)      That once the property is auctioned and sold, the Clerk of this Court issue a writ addressed to the Registry of the Property ordering the cancellation of the foreclosed mortgage and of any other junior liens recorded therein;

      g)      For such further relief as in accordance with law and equity may be proper.

In Guaynabo, Puerto Rico, this 22 day of October , 2020.

/s/ Juan Carlos Fortuño Fas
JUAN CARLOS FORTUÑO FAS
USDCPR 211913
FORTUÑO & FORTUÑO FAS, C.S.P.
P.O. BOX 3908
GUAYNABO, PR 00970
TEL. 787-751-5290
FAX. 787-751-6155
Email: dcfilings@fortuno-law.com

1521.280

Forma FmHA 1940-17 (S)
(Rev. 11-1-78)

### DEPARTAMENTO DE AGRICULTURA DE ESTADOS UNIDOS
### ADMINISTRACION DE HOGARES DE AGRICULTORES

### PAGARE

| CLASE DE PRESTAMO |
| --- |
| Tipo: **FO — LIMITED RESOURCE** |
| De acuerdo a: |
| ☒ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

| Nombre |
| --- |
| **WILFREDO LOPEZ CALCERRADA** |

| Estado | Oficina |
| --- | --- |
| **PUERTO RICO** | **AGUADILLA** |

| Caso Núm. | Fecha |
| --- | --- |
| 63-20-584072865 | 18 DE FEBRERO DE 1982 |

| ACCION QUE REQUIERE PAGARE: |  |
| --- | --- |
| ☐ Préstamo Inicial | ☐ Nuevo Plan de Pago |
| ☒ Préstamo Subsiguiente | ☐ Reamortización |
| ☐ Consolidación y préstamo subsiguiente | ☐ Venta a Crédito |
| ☐ Consolidación | ☐ Pagos Diferidos |

POR VALOR RECIBIDO, el Prestatario(s) subscribiente y cualquier otro co-deudor mancomunada y solidariamente pagaremos a la orden de Estados Unidos de América, actuando por conducto de la Administración de Hogares de Agricultores del Departamento de Agricultura de los Estados Unidos (denominado en adelante el "Gobierno") o su cesionario en su oficina en _____ **AGUADILLA, PUERTO RICO**

o en otro sitio designado por el Gobierno por escrito, la suma principal de **SETENTA Y CUATRO MIL DOLARES**

_____ dólares ($ **74,000.00** ) más intereses sobre el principal adeudado al

**SEIS Y CINCO OCTAVOS** _____ POR CIENTO ( **6.625** %) anual. Si este pagaré

es para un préstamo de Recursos Limitados (indicado en el encasillado superior "Clase de Préstamo"), el Gobierno puede **CAMBIAR EL PORCIENTO DE INTERES**, de acuerdo con los reglamentos de la Administración de Hogares de Agricultores, no más frecuente que trimestralmente, notificando por correo al Prestatario con treinta (30) días de anticipación a su última dirección. El nuevo tipo de interés no deberá exceder el porciento de interés más alto establecido en los reglamentos de la Administración de Hogares de Agricultores para el tipo de préstamo arriba indicado.

Principal e intereses serán pagados en _____ **41** _____ plazos, según indicado abajo, excepto si es modificado por un tipo de interés diferente, en o antes de las siguientes fechas:

| | | |
| --- | --- | --- |
| $ **1,000.00** en enero 1, 19 **83** ; | $ _____ en enero 1, 19 ; | |
| $ **1,500.00** en enero 1, 19 **87** ; | $ _____ en enero 1, 19 ; | |
| $ **5,856.00** en enero 1, 19 **86** ; | $ _____ en enero 1, 19 ; | |
| $ _____ en enero 1, 19 ; | $ _____ en enero 1, 19 ; | |
| $ _____ en enero 1, 19 ; | $ _____ en enero 1, 19 ; | |

y $ **5,856.00** _____ , subsiguientemente en enero 1 de cada año hasta que el principal e intereses sean completamente pagados excepto que el plazo final de la deuda aquí evidenciada, de no ser pagada anteriormente, vencerá y será pagadero en **40** años de la fecha de este pagaré y excepto que se podrán hacer pagos adelantados según se provee más abajo. La consideración aquí envuelta respaldará cualquier convenio modificando el plan de pagos.

Si la cantidad total del préstamo no es adelantada a la fecha del cierre, el préstamo será adelantado al Prestatario según solicitado por el Prestatario y aprobado por el Gobierno. La aprobación del Gobierno será dada siempre y cuando el adelanto es solicitado para un propósito autorizado por el Gobierno. Se acumularán intereses por la cantidad de cada adelanto desde su fecha actual como se demuestra en el Registro de Adelantos en el final de este pagaré. El Prestatario autoriza al Gobierno a anotar la(s) cantidad(es) y fecha(s) de tal(es) adelanto(s) en el Registro de Adelantos.

En cada pagaré reamortizado o consolidado, o con un nuevo plan de pago, los intereses acumulados a la fecha de este instrumento deberán ser sumados al principal y ese nuevo principal acumulará intereses a razón del porciento evidenciado por este instrumento.

Todo pago hecho en cualquier deuda representada por este pagaré será primero aplicado a intereses computados a la fecha efectiva del pago y después al principal.

Pagos adelantados de los plazos estipulados o cualquier parte de los mismos, podrán hacerse en cualquier tiempo a opción del Prestatario. Reembolsos y pagos extras, según se definen en los reglamentos (7 C.F.R. 1861.2) de la Administración de Hogares de Agricultores, de acuerdo con la fuente de los fondos envueltos, después de abonarse los intereses, se aplicarán a los últimos plazos a vencer bajo este pagaré y no afectarán la obligación del Prestatario de pagar los restantes plazos según se especifican en el mismo. Si el Gobierno en cualquier momento cediera este pagaré y asegura el pago del mismo, el prestatario continuará haciendo los pagos al Gobierno como agente cobrador del tenedor.

Mientras este pagaré esté en poder de un prestamista asegurado, los pagos adelantados hechos por el Prestatario podrán, a opción del Gobierno, ser remitidos por el Gobierno prontamente al tenedor o, a excepción del pago final, podrán ser retenidos por el Gobierno y remitidos al tenedor a base de plazo anual vencido. La fecha efectiva de todo pago hecho por el prestatario, excepto pagos retenidos y remitidos por el Gobierno al tenedor a base de plazo anual vencido será la fecha del cheque del Tesoro de los Estados Unidos mediante el cual el Gobierno remite el pago al tenedor. La fecha efectiva de cualquier pago adelantado retenido y remitido por el Gobierno al tenedor a base de plazo anual vencido, será la fecha del pago adelantado por el Prestatario y el Gobierno pagará los intereses a los cuales el tenedor tiene derecho que se devenguen entre la fecha efectiva de cualquiera de dichos pagos adelantados y la fecha del cheque del Tesoro remitido al tenedor.

Cualquier cantidad adelantada o invertida por el Gobierno para el cobro de este pagaré o para preservar o proteger la garantía del préstamo o de otra manera invertido bajo los términos de cualquier convenio de garantía u otro instrumento otorgado en relación con el préstamo aquí evidenciado, a opción del Gobierno pasará a ser parte del préstamo y devengará intereses al mismo tipo de interés que el principal de la deuda aquí evidenciada y vencerá y será pagadera inmediatamente por el Prestatario al Gobierno sin necesidad de requerimiento.

La propiedad construida, mejorada, comprada o refinanciada en total o en parte con el préstamo aquí evidenciado no será arrendada, cedida, vendida, transferida o gravada voluntariamente o de otra forma, sin el previo consentimiento por escrito del Gobierno. A menos que el Gobierno consienta lo contrario por escrito, el Prestatario operará personalmente dicha propiedad como una finca si este préstamo es a dueño de finca (FO).

Si una "Consolidación y un Préstamo Subsiguiente", "Consolidación", "Reamortización" o un "Nuevo Plan de Pago" es indicado en el encasillado superior de la primera página "Acción que Requiere Pagaré", este pagaré es otorgado para consolidar, reamortizar o evidenciar un nuevo plan de pago pero no en satisfacción del principal e intereses del siguiente pagaré(s) o convenio(s) de subrogación (nuevos términos):

| VALOR DEL PAGARÉ | INTERESES | FECHA | PRESTATARIO ORIGINAL | ULTIMO PLAZO A VENCER |
|---|---|---|---|---|
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |

Los documentos de garantía tomados en relación con los préstamos evidenciados por estos pagarés descritos u otras obligaciones relacionadas no son afectadas por el otorgamiento de esta consolidación, reamortización o nuevo plan de pago. Estos instrumentos de garantía continuarán en efecto y la garantía ofrecida para los préstamos evidenciados por los pagarés descritos permanecerán como garantía para el préstamo evidenciado por este pagaré y por cualquier otra obligación relacionada.

**CONVENIO DE REFINANCIAMIENTO:** Si en cualquier tiempo el Gobierno determinare que el Prestatario puede obtener un préstamo de una cooperativa responsable u otra fuente de crédito privada a un tipo de interés y términos razonables para préstamos por tiempo y condiciones similares, el Prestatario, a requerimiento del Gobierno, solicitará y aceptará el préstamo en cantidad suficiente para satisfacer este pagaré en su totalidad y pagar las acciones necesarias si el prestamista es una cooperativa.

**INCUMPLIMIENTO:** La falta de pago a su vencimiento de cualquier deuda aquí evidenciada o el incumplimiento de cualquier condición o acuerdo bajo este documento constituirá incumplimiento bajo cualquier otro instrumento evidenciando una deuda del Prestatario asegurada o garantizada por el Gobierno o en cualquier otra forma relacionada con dicha deuda; el incumplimiento bajo cualquier otro instrumento constituirá incumplimiento bajo los términos de este documento. **COMETIDO CUALQUIER INCUMPLIMIENTO**, el Gobierno, a su opción podrá declarar toda o parte de dicha deuda vencida y pagadera inmediatamente.

Este Pagaré se otorga como evidencia de un préstamo al Prestatario concedido o asegurado por el Gobierno de conformidad con la Consolidated Farm and Rural Development Act o el Emergency Agricultural Credit Adjustment Act of 1978 y para el tipo de préstamo según indicado en el encasillado "CLASE DE PRESTAMO" más arriba. Este Pagaré está sujeto a los reglamentos presentes de la Administración de Hogares de Agricultores y a sus futuros reglamentos no inconsistentes con las estipulaciones aquí consignadas.

Presentación, protesto y aviso son por la presente expresamente renunciados.

_WILFREDO LOPEZ CALCERRADA_ _(Prestatario)_

_AWILDA RAMOS VAZQUEZ_ _(Prestatario)_

BOX 38

SAN ANTONIO, PUERTO RICO   00752

## CERTIFICATION

I, Juan M. Ortiz Serbiá, of legal age, married, a resident of Guayama, Puerto Rico. In my official capacity as State Executive Director of the Farm Service Agency, U.S. Department of Agriculture, hereby declare under penalty of perjury that this is a true and exact copy of the original document which I have under my custody.

San Juan, Puerto Rico

JUAN M. ORTIZ SERBIÁ
State Executive Director

| REGISTRO DE ADELANTOS | | | | | |
|---|---|---|---|---|---|
| CANTIDAD | FECHA | CANTIDAD | FECHA | CANTIDAD | FECHA |
| $ 74,000.00 | 2/18/82 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ 74,000.00 | |

Jay-Ce–Agricultura

*Posición 2*

Forma FmHA 1940-17 (S)
(Rev. 11-1-78)

**FmHA Form 1940-17 (S)**
**(Rev. 11-1-78)**

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION
PROMISSORY NOTE

TYPE OF LOAN
Type: FO – Limited Resources
In accordance with:
    X   Consolidated Farm and Rural Development Act
        Emergency Agricultural Credit Adjustment Act of 1978

Name: WILFREDO LOPEZ CALZADA
State: PUERTO RICO
Office: AGUADILLA
Case Number: 63-20-584072865
Date: FEBRUARY 18, 1982

ACTION REQUIRING NOTE:

|   |   |   |   |
|---|---|---|---|
| | Initial Loan | | New Payment Plan |
| X | Subsequent Loan | | Reamortization |
| | Consolidation and Subsequent Loan | | Sale on Credit |
| | Consolidation | X | Deferred Payments |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any other co-borrower, jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture (herein called the "Government"), or its representative, at its offices in AGUADILLA, PUERTO RICO, or at another location designated in writing by the Government, the principal sum of SEVENTY-FOUR THOUSAND DOLLARS ($74,00.00), plus interest on the unpaid principal of SIX and FIVE EIGHTS (6.625%) PER ANNUM. If this note is for a Limited Resources Loan (indicated in the box above, under the heading "Type of Loan"), the Government may CHANGE THE INTEREST RATE, in accordance with the Farmers Home Administration regulations, not more frequently than a calendar trimester basis, and shall notify Borrower at his most current address by mail, with thirty (30) days' notice. The new interest rate shall not exceed the highest interest rate established by the Farmers Home Administration regulations for the type of loan indicated above.

Principal and interests shall be paid in 41 installments, as indicated below, unless modified by a different interest rate, on or before the following dates:

$1,000.00.................on January 1, 1982
$1,750.00.................on January 1, 1982
$5,856.00.................on January 1, 1984
and $5,856.00 each January first subsequently thereafter until the principal and interests are completely paid, except for the final payment of the debt evidenced herein, which, if not sooner paid, shall be due and payable 40 years from the date of this note, with the exception that prepayments may be made as provided for below. The consideration hereof shall support any agreement modifying the schedule of payments.

If the total amount of the loan is not forwarded by the due date, the loan will be forwarded to Borrower, pursuant to request by Borrower and approval by the Government. Approval by the Government shall be granted only when the loan is requested for purposes authorized by the Government. Interests will accrue on the amount of each loan starting on the date these become effective as shown in the Payment Log at the end of this note. Borrower authorizes the Government to note the amount(s) and date(s) of any prepayment(s) in the Payment Log.

For any note that is reamortized, consolidated or with a new payment plan, interests accumulated as of the date of this instrument will be added to the principal and the new principal will accrue interests at the rate evidenced herein.

1

Every payment made on any indebtedness evidenced by this note shall be applied first to interests computed as of the effective payment date and then to the principal.

Payments in advance of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in regulations (7 C.F.R. 1861.2) of the Farmers Home Administration, according to the source of the funds involved, shall, after payment of interest, be applied to the last installments to come due under this promissory note, and shall not affect Borrower's duty to pay the remaining installments as scheduled herein. If at any time the Government should assign this promissory note and insure payment of the same, the Borrower shall continue making payments to the Government as collecting agent of the holder.

If this note is held by an insured lender, advance payments made by Borrower may, at the Government's option, be transferred promptly by the Government to the holder, except the final payment, or such payments shall be retained by the Government and transferred to the holder either on an annual installment due date basis. The effective date of any advance payment retained and transferred by the Government to the holder on an annual installment due date basis shall be the date of Borrower's advance payment, and the Government shall pay the interest to which the holder is entitled, accruing between the effective date of any such advance payment and the date of the Treasury check paid to the holder.

Any amount forwarded or invested by the Government in order to collect on this promissory note or to preserve or protect the security of the loan or paid in any way under the terms of any security agreement or other instrument executed in relation to the loan evidenced herein, shall, at the option of the Government, become part of the loan and shall accrue interest at the same rate as the principal of the debt evidenced herein and shall be immediately due and payable by the Borrower to the Government without the need of requirements.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced herein shall not be voluntarily leased, surrendered, sold, transferred, or encumbered, without the previous written consent of the Government. Unless the Government gives written consent to the contrary, Borrower will personally manage said property as a farm if this is a Farm Owner (FO) loan.

If "Consolidation and Subsequent Loan", "Consolidation", "Reamortization" or "New Payment Plan" is marked in the upper box of the first page titled "Action Requiring Note", this promissory note is executed to consolidate, reamortize or as evidence of a new payment plan, but not to satisfy the principal and interests of the following promissory note(s) or assumption agreement(s) (new terms):

AMOUNT OF NOTE: $
INTERESTS: %
DATE:
ORIGINAL BORROWER:
LAST INSTALLMENT DUE:

The security documents taken in relation to the loans evidenced by the described promissory notes or other stated obligations are not affected by the execution of this consolidation, reamortization or new payment plan. These security instruments shall remain in effect and the security offered for the loans evidenced by the described promissory notes shall continue to guarantee the loan evidenced by this promissory note and by any other stated obligations.

REFINANCING AGREEMENT: If at any time the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or other private credit source at reasonable rates and terms for loans for similar purposes and time periods, Borrower shall, at the Government's request, apply for and accept a loan of a sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary shares.

DEFAULT: Failure to pay any debt described herein when due, or failure to comply with any condition or agreement of this document, shall constitute default under any other instrument evidencing a debt insured or guaranteed by the Government, or in any other way related to such debt, that the Borrower may have; and default

2

under any other instrument shall constitute default under the terms of this document. UPON ANY SUCH DEFAULT, the Government, at its discretion, may declare all or part of such debt due and payable immediately.

This note is executed as evidence of a loan to Borrower made or insured by the Government, pursuant to the Consolidated Farm and Rural Development Act or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan indicated in the box 'TYPE OF LOAN" above. This note is subject to the present regulations of Farmers Home Administration and to its future regulations not inconsistent with the stipulations expressed herein.

Presentation, protest, and notice are hereby expressly waived.

[Signature]
WILFREDO LOPEZ CALCERRADA (BORROWER)
[Signature]
AWILDA RAMOS VAZQUEZ (BORROWER)


BOX 38
SAN ANTONIO, PUERTO RICO 00752


PAYMENT LOG

|     | AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| --- | --- | --- | --- | --- | --- | --- |
| (1) | $74,000.00 | 2-18-82 |     |     |     |     |

TOTAL: $74,000.00

# CERTIFICATE

I hereby certify that the attached Promissory Note is a true and accurate translation to the best of my knowledge, ability and belief. I am experienced and competent to translate from Spanish into English.

3

DATED this 7th day of March of 2007.

Lorena Pike
*Translator and Interpreter*

WITNESS my hand and official seal hereto affixed this

Signature

Print Name: Rosa Capdevielle
Notary Public in and for the State of Washington
My appointment expires: 02/01/2010

4

**Forma FmHA 427-1 PR**
**10/77**



------------------------ NUMERO VEINTINUEVE. ----------

--------------- HIPOTECA VOLUNTARIA -----------------

En    Aguadilla, Puerto Rico, a dieciocho de Febrero
de mil novecientos ochenta y dos. --------------------

------------------------ ANTE MI ----------------

------------------ HECTOR REICHARD, ---------

Abogado y Notario Público de esta Isla con residencia y vecindad en
Aguadilla, Puerto Rico,   y oficina en Aguadilla, Puerto
Rico. ------------------------------------------------

------------------ COMPARECEN ---------------

Las personas nombradas en el párrafo DUODECIMO de esta hipoteca
denominados de aquí en adelante el "deudor hipotecario" y cuyas
circunstancias personales aparecen de dicho párrafo. ----------------

Doy fe del conocimiento personal de los comparecientes, así como por sus
dichos de su edad, estado civil, profesión y vecindad. ----------------

Aseguran hallarse en el pleno goce de sus derechos civiles, la libre
administración de sus bienes y teniendo a mi juicio la capacidad legal
necesaria para este otorgamiento,

EXPONEN

PRIMERO: El deudor hipotecario es dueño de la finca o fincas descritas en
el párrafo UNDECIMO así como de todos los derechos e intereses en las
mismas, denominada de aquí en adelante "los bienes". -----------------

SEGUNDO: Que los bienes aquí hipotecados están   afectos a los
gravámenes que se especifican en el párrafo UNDECIMO. --------------

TERCERO: Que el deudor hipotecario viene obligado para con Estados
Unidos de América, actuando por conducto de la Administración de Hogares
de Agricultores, denominado de aquí en adelante el "acreedor hipotecario",
en relación con un préstamo o préstamos evidenciado por uno o más pagarés
o convenio de subrogación, denominado en adelante el "pagaré", sean uno o
más. Se requiere por el Gobierno que se hagan pagos adicionales mensuales
de una doceava parte de las contribuciones, avaluos (impuestos), primas de

FORMA FmHA 427-1 P.

1

Forma FmHA-427-1 PR
10/77

seguros y otros cargos que se hayan estimados sobre la propiedad hipotecaria. ————————————

CUARTO: Se sobreentiende que: ————————————————

(Uno) El pagaré evidencia un préstamo o préstamos al deudor hipotecario por la suma de principal especificada en el mismo, concedido, con el propósito y la intención de que el acreedor hipotecario puede ceder el pagaré en cualquier tiempo y asegurar su pago de conformidad con el Acta de mil novecientos sesenta y uno consolidando la Administración de Hogares de Agricultores o el Título Quinto de la Ley de Hogares de mil novecientos cuarenta y nueve, según ha sido enmendada. ————————————

(Dos) Cuando el pago del pagaré es garantizado por el acreedor hipotecario, puede ser cedido de tiempo en tiempo y cada tenedor de dicho pagaré a su vez será el prestamista asegurado. ————————————



(Tres) Cuando el pago del pagaré es asegurado por el acreedor hipotecario, el acreedor hipotecario otorgará y entregará al prestamista asegurado conjuntamente con el pagaré un endoso de seguro garantizando totalmente el pago de principal e intereses de dicho pagaré. ————————————

(Cuatro) En todo tiempo que el pago del pagaré esté asegurado por el acreedor hipotecario, el acreedor hipotecario, por convenio con el prestamista asegurado, determinarán en el endoso de seguro la porción del pago de intereses del pagaré que será designada como "cargo anual". ————————

(Cinco) Una condición del aseguramiento de pago del pagaré será de que el tenedor cederá todos sus derechos y remedios contra el deudor hipotecario y cualquiera otro en relación con dicho préstamo así como también a los beneficios de esta hipoteca y aceptará en su lugar los beneficios del seguro, y en caso de violación de cualquier convenio o estipulación aquí contenida o en el pagaré o en cualquier convenio suplementario por parte del deudor hipotecario, a requerimiento del acreedor hipotecario endosará el pagaré al acreedor hipotecario. ————————————

(Seis)   Entre otras cosas, es el propósito e intención de esta hipoteca, que en todo tiempo cuando el pagaré esté en poder del acreedor hipotecario, o en el caso en que el acreedor hipotecario ceda esta hipoteca sin asegurar el pagaré, esta hipoteca garantizará el pago del pagaré pero cuando el pagaré

Forma FmHA-427-1 PR
10/77

esté en poder de un prestamista asegurado, esta hipoteca no garantizará el pago del pagaré o formará parte de la deuda evidenciada por el mismo, pero en cuanto al pagaré y a dicha deuda, constituirá una hipoteca de indemnización · para garantizar al acreedor hipotecario contra cualquier pérdida bajo el endoso de seguro por causa de cualquier incumplimiento por parte del deudor hipotecario. ————————————————————————

QUINTO: Que en consideración al préstamo y (a) en todo tiempo que el pagaré sea conservado por el acreedor hipotecario o en el caso de que el acreedor hipotecario ceda la presente hipoteca sin el seguro de pago del pagaré y en garantía del importe del pagaré según se especifica en el subpárrafo (Uno) del párrafo NOVENO con sus intereses al tipo estipulado y para asegurar el pronto pago de dicho pagaré, su renovación o extensión y cualquier convenio contenido en el mismo, (b) en todo tiempo que el pagaré sea poseído por el prestamista asegurado en garantía de las sumas especificadas en el subpárrafo (Dos) del párrafo NOVENO aquí consignado, para garantizar el cumplimiento del convenio del deudor hipotecario de indemnizar y conservar libre al acreedor hipotecario contra pérdidas bajo el endoso de seguro por razón de incumplimiento del deudor hipotecario y (c) en cualquier caso y en todo tiempo en garantía de las sumas adicionales consignadas en el subpárrafo (Tres) del párrafo NOVENO de este instrumento y para asegurar el cumplimiento de todos y cada uno de los convenios y estipulaciones del deudor hipotecario aquí contenidos o en cualquier otro convenio suplementario, el deudor hipotecario por la presente constituye hipoteca voluntaria a favor del acreedor hipotecario sobre los bienes descritos en la párrafo UNDECIMO más adelante, así como sobre los derechos, intereses, servidumbres, derechos hereditarios, adhesiones pertenecientes a los mismos, toda renta, créditos, beneficios de los mismos, y todo producto e ingreso de los mismos, toda mejora o propiedad personal en el presente o que en el futuro se adhiera o que sean razonablemente necesarias para el uso de los mismos, sobre las aguas, los derechos de agua o acciones en los mismos, pertenecientes a las fincas o a todo pago que en cualquier tiempo se adeude al deudor hipotecario por virtud de la venta, arrendamiento, transferencia, enajenación o expropiación total o parcial de o por daños a cualquier parte de las mismas o a los intereses sobre ellas, siendo entendido que este gravámen quedará en toda su fuerza y vigor hasta que las cantidades especificadas en el párrafo NOVENO con sus intereses antes y después del vencimiento hasta que los mismos hayan sido pagados en su totalidad. En caso de ejecución, los bienes responderán del pago del principal, los intereses antes y después de vencimiento, hasta su total



FORMA FmHA-427-1 PR

Forma FmHA-427-1 PR
10/77

solvento, pérdida sufrida por el acreedor hipotecario como asegurador del pagaré, contribuciones, prima de seguro o cualquier otro desembolso o adelanto por el acreedor hipotecario por cuenta del deudor hipotecario con sus intereses hasta que sean pagados al acreedor hipotecario, costas, gastos y honorarios de abogado del acreedor hipotecario, toda extensión o renovación de dichas obligaciones con intereses sobre todas y todo otro cargo o suma adicional especificada en el párrafo NOVENO de este documento. ————

SEXTO: El deudor hipotecario expresamente conviene lo siguiente:————

(Uno) Pagar al acreedor hipotecario prontamente a su vencimiento cualquier deuda aquí garantizada e indemnizar y conservar libre de pérdida al acreedor hipotecario bajo el seguro del pago del pagaré por incumplimiento del deudor hipotecario. En todo tiempo cuando el pagaré sea poseído por el prestamista asegurado, el deudor hipotecario continuará haciendo los pagos contra dicho pagaré al acreedor hipotecario como agente cobrador del tenedor del mismo. ————

(Dos) A pagar al acreedor hipotecario una cuota inicial por inspección y tasación y cualquier cargo por delincuencia requerido en el presente o en el futuro por los reglamentos de la Administración de Hogares de Agricultores.

(Tres) En todo tiempo cuando el pagaré sea poseído por un prestamista asegurado, cualquier suma adeudada y no pagada bajo los términos del pagaré, menos la cantidad o carga anual, podrá ser pagada por el acreedor hipotecario al tenedor del pagaré bajo los términos provistos en el pagaré y en el endoso de seguro referido en el párrafo CUARTO anterior por cuenta del deudor hipotecario. ————

Cualquier suma vencida y no pagada bajo los términos del pagaré, sea éste poseído por el acreedor hipotecario o por el prestamista asegurado, podrá ser acreditada por el acreedor hipotecario al pagaré y en su consecuencia constituirá un adelanto por el acreedor hipotecario por cuenta del deudor hipotecario.————

Cualquier adelanto por el acreedor hipotecario tal como se describe en este subpárrafo devengará intereses a razón del **seis punto seiscientos veinticinco por** ciento (6.625 %) anual a partir de la fecha en que venció el pago hasta la fecha en que el deudor hipotecario lo satisfaga.————

(Cuatro) Fuere o no el pagaré asegurado por el acreedor hipotecario,

FORMA FmHA-427-1 PR

Forma FmHA-427-1 PR
10/77

cualquier o todo adelanto hecho por el acreedor hipotecario para prima de
seguro, reparaciones, gravámenes u otra reclamación en protección de los
bienes hipotecados o para contribuciones o impuestos u otro gasto similar
por razón de haber el deudor hipotecario dejado de pagar por los mismos,
devengará intereses a razón del tipo estipulado en el subpárrafo anterior
desde la fecha de dichos adelantos hasta que los mismos sean satisfechos por
el deudor hipotecario. ———————————————————————

(Cinco) Todo adelanto hecho por el acreedor hipotecario descrito en esta
hipoteca con sus intereses vencerá inmediatamente y será pagadero por el
deudor hipotecario al acreedor hipotecario sin necesidad de requerimiento
alguno en el sitio designado en el pagaré y será garantizado por la presente
hipoteca. Ningún adelanto hecho por el acreedor hipotecario no relavará al
deudor hipotecario de su violación del convenio de pagar. Dichos adelantos,
con sus intereses, se reembolsarán de los primeros pagos recibidos del deudor
hipotecario. Si no hubieren adelantos, todo pago verificado por el deudor
hipotecario podrá ser aplicado al pagaré o a cualquier otra deuda del deudor
hipotecario aquí garantizada en el orden que el acreedor hipotecario
determinare. ———————————————————————

(Seis) Usar el importe del préstamo evidenciado por el pagaré únicamente
para los propósitos autorizados por el acreedor hipotecario. ——————————

(Siete) A pagar a su vencimiento las contribuciones, impuestos especiales,
gravámenes y cargas que graven los bienes o los derechos o intereses del
deudor hipotecario bajo los términos de esta hipoteca. ——————————

(Ocho) Obtener y mantener seguro contra incendio y otros riesgos según
requiera el acreedor hipotecario sobre los edificios y las mejoras existentes en
los bienes o cualquier otra mejora introducida en el futuro. El seguro contra
fuego y otros riesgos serán en la forma y por las cantidades, términos y
condiciones que aprobare el acreedor hipotecario. ——————————

(Nueve) Conservar los bienes en buenas condiciones y prontamente verificar
las reparaciones necesarias para la conservación de los bienes; no cometerá ni
permitirá que se cometa ningún deterioro de los bienes; ni removerá ni
demolerá ningún edificio o mejora en los bienes, ni cortará ni removerá
madera de la finca, ni removerá ni permitirá que se remueva grava, arena,
aceite, gas, carbón u otros minerales sin el consentimiento del acreedor
hipotecario y prontamente llevará a efecto las reparaciones en los bienes que



FORMA FmHA-427-1 PR

Forma FmHA-427-1 PR
10/77

el acreedor hipotecario requiera de tiempo en tiempo. El deudor hipotecario cumplirá con aquellas prácticas de conservación de suelo y los planes de la finca y del hogar que el acreedor hipotecario de tiempo en tiempo pueda prescribir. ------------------------------------------------------------

(Diez) Si esta hipoteca se otorga para un préstamo a dueño de finca según se identifica en los reglamentos de la Administración de Hogares de Agricultores, el deudor hipotecario personalmente operará los bienes por sí y por medio de su familia como una finca y para ningún otro propósito y no arrendará la finca ni parte de ella a menos que el acreedor hipotecario consienta por escrito en otro método de operación o al arrendamiento. ------

(Once) Someterá en la forma y manera que el acreedor hipotecario requiera la información de sus ingresos y gastos y cualquier otra información relacionada con la operación de los bienes y cumplirá con todas las leyes, ordenanzas y reglamentos que afecten los bienes o su uso. ----------------

(Doce) El acreedor hipotecario, sus agentes y abogados, tendrán en todo tiempo el derecho de inspeccionar y examinar los bienes con el fin de determinar si la garantía otorgada está siendo mermada o deteriorada, y si dicho examen o inspección determinare, a juicio del acreedor hipotecario, que la garantía otorgada está siendo mermada o deteriorada, tal condición se considerará como una violación por parte del deudor hipotecario de los convenios de esta hipoteca. ---------------------------------------------

(Trece) Si cualquier otra persona detentare con o impugnare el derecho de posesión del deudor hipotecario a los bienes, el deudor hipotecario inmediatamente notificará al acreedor hipotecario de dicha acción y el acreedor hipotecario, a su opción, podrá instituir aquellos procedimientos que fueren necesarios en defensa de sus intereses y los gastos y desembolsos incurrido por el acreedor hipotecario en dichos procedimientos, serán cargados a la deuda del deudor hipotecario y se considerarán garantizados por esta hipoteca dentro del crédito adicional de la cláusula hipotecaria para adelantos, gastos y otros pagos. -----------------------------------------

(Catorce) Si el deudor hipotecario en cualquier tiempo mientras estuviere vigente esta hipoteca, abandonare los bienes o voluntariamente se los entregase al acreedor hipotecario, el acreedor hipotecario es por la presente autorizado y con poderes para tomar posesión de los bienes, arrendarlos y administrar los bienes y cobrar sus rentas, beneficios e ingresos de los mismos

Forma FmHA-427-1 PR
10/77

y aplicarlos en primer término a los gastos de cobro y administración y en segundo término al pago de la deuda evidenciada por el pagaré o cualquier otra deuda del deudor hipotecario y aquí garantizada, en el orden y manera que el acreedor hipotecario determinare. ————————————————

(Quince) En cualquier tiempo que el acreedor hipotecario determinare que el deudor hipotecario puede obtener un préstamo de una asociación de crédito para producción, de un Banco Federal u otra fuente responsable, cooperativa o privada, a un tipo de interés y términos razonables para préstamos por tiempo y propósitos similares, el deudor hipotecario, a requerimiento del acreedor hipotecario, solicitará y aceptará dicho préstamo en cantidad suficiente para satisfacer el pagaré y cualquier otra deuda aquí garantizada y pagar por las acciones necesarias en la agencia cooperativa en relación con dicho préstamo. ————————————————

(Dieciseis) El incumplimiento de cualesquiera de las obligaciones garantizadas por esta hipoteca, o si el deudor hipotecario o cualquier otra persona incluida como deudor hipotecario faltare en el pago de cualquier cantidad o violare o no cumpliere con cualquier cláusula, condición, estipulación o convenio o acuerdo aquí contenido o en cualquiera convenio suplementario, o falleciere o se declarare o fuere declarado incompetente, en quiebra, insolvente o hiciere una cesión en beneficio de sus acreedores, o los bienes o parte de ellos o cualquier interés en los mismos fueren cedidos, vendidos, arrendados, transferidos o gravados voluntariamente o de otro modo, sin el consentimiento por escrito del acreedor hipotecario, el acreedor hipotecario es irrevocablemente autorizado y con poderes, a su opción y sin notificación: (Uno) a declarar toda deuda no pagada bajo los términos del pagaré o cualquier otra deuda al acreedor hipotecario aquí garantizada, inmediatamente vencida y pagadera y proceder a su ejecución de acuerdo con la ley y los términos de la misma; (Dos) incurrir y pagar los gastos razonables para la reparación o mantenimiento de los bienes y cualquier gasto u obligación que el deudor hipotecario no pagó según se conviniere en esta hipoteca, incluyendo las contribuciones, impuestos, prima de seguro y cualquier otro pago o gasto para la protección y conservación de los bienes y de esta hipoteca o incumplimiento de cualquier precepto de esta hipoteca y (Tres) de solicitar la protección de la ley. ————————————————

(Diecisiete) El deudor hipotecario pagará o reembolsará al acreedor hipotecario todos los gastos necesarios para el fiel cumplimiento de los convenios y acuerdos de esta hipoteca, los del pagaré y en cualquier otro

Forma FmHA-427-1 PR
10/77

convenio suplementario, incluyendo los gastos de mensura, evidencia de título, costas, inscripción y honorarios de abogado. ————————

(Dieciocho) Sin afectar en forma alguna los derechos del acreedor hipotecario para requerir y hacer cumplir en cualquier fecha posterior los convenios, acuerdos u obligaciones aquí contenidas o similares u otros convenios y sin afectar la responsabilidad de cualquier persona para el pago del pagaré o cualquier otra deuda aquí garantizada y sin afectar el gravámen impuesto sobre los bienes o la prioridad del gravámen, el acreedor hipotecario es por la presente autorizado y con poder en cualquier tiempo (Uno) renunciar el cumplimiento de cualquier convenio u obligación aquí contenida o en el pagaré o en cualquier convenio suplementario; (Dos) negociar con el deudor hipotecario o conceder al deudor hipotecario cualquier indulgencia o tolerancia o extensión de tiempo para el pago del pagaré (con el consentimiento del tenedor de dicho pagaré cuando esté en manos de un prestamista asegurado) o para el pago de cualquier deuda a favor del acreedor hipotecario, y aquí garantizada; o (Tres) otorgar y entregar cancelaciones parciales de cualquier parte de los bienes de la hipoteca aquí constituída u otorgar diferimiento o postergación de esta hipoteca a favor de cualquier otro gravámen constituído sobre dichos bienes.

(Diecinueve) Todos los derechos, título e interés en y sobre la presente hipoteca, incluyendo pero no limitando el poder de otorgar consentimientos, cancelaciones parciales, subordinación, cancelación total, radica sola y exclusivamente en el acreedor hipotecario y ningún prestamista asegurado tendrá derecho, título o interés alguno en o sobre el gravámen y los beneficios aquí contenidos. ————————

(Veinte) El incumplimiento de esta hipoteca constituirá incumplimiento de cualesquiera otra hipoteca, préstamo refaccionario, o hipoteca de bienes muebles poseída o asegurada por el acreedor hipotecario y otorgada o asumida por el deudor hipotecario; y el incumplimiento de cualesquiera de dichos instrumentos de garantía constituirá incumplimiento de esta hipoteca.

(Veintiuno) Todo aviso que haya de darse bajo los términos de esta hipoteca será remitido por correo certificado a menos que se disponga lo contrario por ley, y será dirigido hasta tanto otra dirección sea designada en un aviso dado al efecto, en el caso del acreedor hipotecario a Administración de Hogares de Agricultores, Departamento de Agricultura de Estados Unidos, San Juan, Puerto Rico, y en el caso del deudor hipotecario, a él a la dirección postal de

—8—

su residencia según se especifica más adelante. ------------------------

Forma FmHA-427-1 PR
10/77

(Veintidos) El deudor hipotecario por la presente cede al acreedor
hipotecario el importe de cualquier sentencia obtenido por expropiación
forzosa para uso público de los bienes o parte de ellos así como también el
importe de la sentencia por daños causados a los bienes. El acreedor
hipotecario aplicará el importe que reciba al pago de los gastos en que
incurriere en su cobro y el balance al pago del pagaré y cualquier deuda al
acreedor hipotecario garantizada por esta hipoteca, y si hubiere algún
sobrante, se reembolsará al deudor hipotecario. ------------------------

SEPTIMO: Para que sirva de tipo a la primera subasta que deberá celebrarse
en caso de ejecución de esta hipoteca, de conformidad con la ley hipotecaria,
según enmendada, el deudor hipotecario por la presente tasa los bienes
hipotecados en la suma de   SETENTA Y CUATRO MIL ------------------
DOLARES ($74,000.00). ------------------------

OCTAVO: El deudor hipotecario por la presente renuncia al trámite de
requerimiento y se considerará en mora sin necesidad de notificación alguna
por parte del acreedor hipotecario. Esta hipoteca está sujeta a los
reglamentos de la Administración de Hogares de Agricultores ahora en vigor
y a futuros reglamentos, no inconsistentes con los términos de esta hipoteca,
así como también sujeta a las leyes del Congreso de Estados Unidos de
América que autorizan la asignación y aseguramiento del préstamo antes
mencionado. ------------------------

NOVENO: Las cantidades garantizadas por esta hipoteca son las siguientes:

Una. En todo tiempo cuando el pagaré relacionado en el párrafo TERCERO
de esta hipoteca sea poseído por el acreedor hipotecario o en caso que el
acreedor hipotecario cediere esta hipoteca sin asegurar el pagaré:   SETENTA
Y CUATRO MIL ----------------------DOLARES ($ 74,000.00)
el principal de dicho pagaré, con sus intereses según estipulados a razón del
seis punto seiscientos por ciento, 6.625 anual;
veinticinco -------

Dos. En todo tiempo cuando el pagaré es poseído por un prestamista
asegurado:
(A)   SETENTA Y CUATRO MIL ------------
DOLARES ($ 74,000.00

—9—

FORMA FmHA-427-1 PR

Forma FmHA 427-1 .
10/77

para indemnizar al acreedor hipote        por adelantos al prestamista asegurado por motivo del incumplimiento del deudor hipotecario de pagar los plazos según se especifica en el pagaré, con intereses según se especifica en el párrafo SEXTO, Tercero; ———————————————

(B)  CIENTO ONCE MIL ———————————————————————
——————————————————————————————————DOLARES ($ 111,000.00)

para indemnizar al acreedor hipotecario además contra cualquier pérdida que pueda sufrir bajo su seguro de pago del pagaré; ————————————

Tres.  En cualquier caso y en todo tiempo; —————————————

(A)
VEINTINUEVE MIL SEISCIENTOS ———  .  DOLARES ($ 29,600.00 )

para intereses después de mora; ————————————————

(B)
CATORCE MIL OCHOCIENTOS ———   DOLARES ($ 14,800.00 )

para contribuciones, seguro y otros adelantos para la conservación y protección de esta hipoteca, con intereses al tipo estipulado en el párrafo SEXTO, Tercero; ——————————————————————

(C)
SIETE MIL CUATROCIENTOS ———   DOLARES ($ 7,400.00 )

para costas, gastos y honorarios de abogado en caso de ejecución; ———

(D)    SIETE MIL CUATROCIENTOS ————————————
——————————————————————————————DOLARES ($ 7,400.00 )

para costas y gastos que incurriere el acreedor hipotecario en procedimientos para defender sus intereses contra cualquier persona que intervenga o impugne el derecho de posesión del deudor hipotecario a los bienes según se consigna en el párrafo SEXTO, Trece. ————————————

DECIMO:  Que el (los) pagaré(s) a que se hace referencia en el párrafo TERCERO de esta hipoteca es (son) descrito(s) como sigue: ——————

"Pagaré otorgado en el caso número sesenta y tres guión veinte guión quinientos ochenta y cuatro guión cero setenta y dos raya ochocientos sesenta y cinco ————————————————
(63-20-584072865) ————    fechado el día dieciocho    (18) ———
——— de    Febrero——— de mil novecientos  ochenta y dos,———

Forma FmHA 427-1 PR
10/77

por la suma de **SETENTA Y CUATRO MIL ($74,000.00)** ---------

-------- dólares de principal más intereses sobre el balance del principal

adeudado a razón del **seis punto seiscientos veinticinco** ---------

( **6.625%** ) por ciento anual, hasta tanto su principal sea

totalmente satisfecho según los términos, plazos, condiciones y estipulaciones

contenidas en dicho pagaré y según acordados y convenidos entre el

Prestatario y el Gobierno; excepto el pago final del total de la deuda aquí

representada, de no haber sido satisfecho con anterioridad, vencerá y será

pagadero a los **cuarenta** ------------ años de la fecha de este pagaré.

--- Dicho pagaré ha sido otorgado como evidencia de un préstamo concedido

por el Gobierno al Prestatario de conformidad con la Ley del Congreso

de los Estados Unidos de América denominada "Consolidated Farm and

Rural Development Act of 1961" o de conformidad con el "Title V of

the Housing Act of 1949", según han sido enmendadas y está sujeto a los

presentes reglamentos de la Administración de Hogares de Agricultores

y a los futuros reglamentos no inconsistentes con dicha Ley . De cuya

descripción, yo, el Notario Autorizante, DOY FE. -------------------

UNDECIMO: Que la propiedad objeto de la presente escritura y sobre la que

se constituye Hipoteca Voluntaria, se describe como sigue: ------------

A. - RUSTICA: radicada en el Barrio Guerrero de Aguadilla,-
Puerto Rico, compuesta de DIECIOCHO CUERDAS CON ------
SESENTA Y UN CENTIMOS de terreno, equivalentes a siete --
hectáreas, treinta y una áreas, cuarenta y cuatro centiáreas y
cincuenta y seis miliáreas, en lindes al NORTE, con María ---
Rodríguez antes, hoy la sucesión de Emilio Cerezo, al SUR,--
con Felina Rodríguez antes, hoy Carlos Cordero; al ESTE,---
con Francisco Bravo , antes, hoy Carlos Cordero; y al ------
OESTE, antes Rosario Rodríguez, después Sucesión de Rafael
Feliciano y hoy con María del Rosario Bravo, Francisco -----
Crespo, Cándido Cortés y Juan López. --------------------

B. - RUSTICA: radicada en el barrio Guerrero de Aguadilla,
Puerto Rico, compuesta de CINCO CUERDAS de terrero, ---
equivalentes a una hectárea, noventa y seis áreas, cincuenta
y una centiáreas y noventa y cinco miliáreas, en lindes al ---
NORTE, con Eduardo Morales, antes, hoy con Benito Cortés;
al SUR, con Agustín Rodríguez antes, hoy con Juan López; al
ESTE, con Isolina Rodríguez y al OESTE, con un camino ----
vecinal.------------------------------------------------

---La finca descrita bajo la letra "A" aparece inscrita al folio
veintidos (22) del tomo doscientos once (211), finca número ocho
mil seiscientos sesenta. ----------------------------------

---La finca descrita bajo la letra "B"inscrita al folio veinti----

11

nueve (29) del tomo doscientos once (211), finca número ocho mil seiscientos sesenta y uno (8,661). --------------------

C. - RUSTICA:  Finca sita en el Barrio Guerrero de Aguadilla, Puerto Rico, compuesta de DIEZ CUERDAS de terreno, igual a tres hectáreas, noventa y tres áreas y cuatro centiáreas, en linde al NORTE, con María Rosario Rodríguez; ---SUR, con la finca que se dirá; ESTE, con camino que separa de Felina Rodríguez y al OESTE, con un camino público; ---además al SUR, Sucesión de Ramón Rodríguez López. --------

---Adquirida por compra a don Edwin Morales Alers y esposa Marta Feliciano Valentín según consta de la escritura número doscientos ochenta y cinco de veintisiete de noviembre de mil novecientos setenta y seis ante el notario Eric Milán Muñiz.

Inscrita al folio ciento ochenta y dos vuelto del tomo ciento noventa de Aguadilla, finca número tres mil cuatrocientos-- cuarenta y cuatro. -------------------------------------

---Esta finca contiene casa residencial de una planta en ----concreto que mide cuarenta y siete pies por treinta y un pies seis pulgadas, localizada en el barrio Guerrero, carretera--cuatrocientos sesenta y seis, kilómetro tres , Aguadilla, ---Puerto Rico. -------------------------------------------

---Afecta a una primera hipoteca a favor de Estados Unidos de América por la suma de VEINTISIETE MIL CUATRO----CIENTOS DOLARES ($27,400.00). -----------------------

Forma FmHA 427-1 PR
10/77

Adquirió el prestatario la descrita finca por compra a--------
don **Edwin Morales Alers y esposa Marta Feliciano** ----------
por compra las fincas descritas bajo las letras A y B,--
según consta de la Escritura Número**veintiocho (28)** ---------
----------------- de fecha **dieciocho de Febrero de mil-**
**novecientos ochenta y dos,**---------------------------------
---------------otorgada en la ciudad de**Aguadilla,**-----------
ante el Notario **Héctor Reichard** y la C por Escritura Nú-
mero doscientos ochenta y cinco de veintisiete de noviem-
bre de mil novecientos setenta y seis ante Eric Milán.-
Dicha propiedad se encuentra **inscritas según es de verse** -----

**después de la descripción de cada una de las fincas.** -----------

_____

_____

_____



DUODECIMO:  Que comparecen en la presente escritura como------

Deudores Hipotecarios **don Wilfredo López Calcerrada y su espo-**

**sa doña Awilda Ramos Vázquez,mayores de edad, propietarios,-**

cuya dirección postal es:  **Box Treinta y Ocho,** San Antonio,

**Puerto Rico,** zip code cero cero sete**cientos cincuenta y**

**dos.**_____

DECIMO TERCERO:  El importe del préstamo aquí consignado se

usó ó será usado para fines agrícolas y la construcción y/o

reparación y/o mejoras de las instalaciones físicas en la-----

finca(s) descrita(s).-------- -------------- --- ---- --- ----

DECIMO CUARTO:  El prestatario ocupará personalmente y usará--

cualquier estructura que haya sido construída, mejorada o------

comprada con el importe del préstamo aquí garantizado y no----

arrendará o usará para otros fines dicha estructura a menos que

el Gobierno lo consienta por escrito.  La violación de esta---

clausula como la violación de cualquiera otro convenio o cláu-

sula aquí contenida ocasionará el vencimiento de la obligación

como si todo el término hubiese transcurrido y en aptitud el

Gobierno de declarar vencido o pagadero el préstamo y proceder

a la ejecución de la hipoteca.------------------------- ----

DECIMO QUINTO:  Esta hipoteca se extiende expresamente a toda

construcción o edificación existente en la(s) finca(s) antes--

Forma FmHA 427-1PR
10/77

descrita(s) y a toda mejora, construcción o edificación que

se construya en dicha finca(s) durante la vigencia del ------

préstamo hipotecario constituído a favor del Gobierno, veri-

ficada por los actuales dueños deudores o por sus cesionarios

o causahabientes.

DECIMO SEXTO:   El deudor hipotecario por la presente-------

renuncia mancomunada y solidariamente por sí y a nombre de--

sus herederos causahabientes, sucesores o representantes a--

favor del acreedor (Administración de Hogares de -----------

Agricultores), cualquier derecho de Hogar Seguro (Homestead)

que en el presente o en el futuro pudiera tener en la ------

propiedad descrita en el párrafo undédimo y en los edificios

allí enclavados o que en el futuro fueran construídos; -----

renuncia esta permitida a favor de la Administración de ----

Hogares de Agricultores por la Ley Número trece (13) del --

veintiocho (28) de mayo de mil novecientos sesenta y nueve--

(1969) (31 L.P.R.A. 1851).--------------------------------

DECIMO SEPTIMO:  El acreedor y el deudor hipotecario -------

convienen en que cualquier estufa, horno, calentador compra-

do o financiado total o parcialmente con fondos del préstamo

aquí garantizado, se considerará e interpretará como parte--

de la propiedad gravada por esta Hipoteca.------------------



13

DECIMO OCTAVO: Manifiestan además los comparecientes en esta escritura que por tratarse de un préstamo para ---- fines agrícolas han acordado en no distribuir la responsabilidad entre las fincas gravadas y por lo tanto todas responderán por separado solidaria y mancomunadamente de la deuda principal, intereses, costas y demás créditos garantizados por esta escritura; todo ello conforme al Artículo Ciento -- Diecinueve de la Ley Hipotecaria, según el mismo ha sido enmendado por la Ley Número Setenta y Nueve del veinticinco de junio de mil novecientos sesenta y nueve. ----------

DECIMO NOVENO: Por tratarse de un préstamo de recursos limitados, según indicado en el pagaré, el Gobierno -- puede cambiar el por ciento de interés de acuerdo con los-- reglamentos de la Administración de Hogares de Agricultores. ---------------------------------------------------

```
--------------------ACEPTACION--------------------
```

---Así lo dicen y otorgan por ante mí, el Notario, después

de haber renunciado a la concurrencia de testigos instru---

mentales.---------------------------------------------

---Leída por mí en voz alta esta escritura a los compare--

cientes luego de haberles advertido del derecho que tenían

de hacerlo por sí y que renunciaron, se ratifican en la ----

misma estampando sus iniciales en todos y cada uno de ---

sus folios y firman.---------------------------------

---Y yo, el Notario: del conocimiento personal de los ----

comparecientes y, por sus dichos, de sus ya expresadas -

circunstancias, de haberles hecho las advertencias de ley;

y de todo lo contenido en este instrumento público: -------

DOY FE.---------------------------------------------

---Firmados: Wilfredo López Calcerrada.- Awilda----

Ramos Vázquez.- Firmado, signado, rubricado y se---

llado: Héctor Reichard.- Aparece cancelado un se--

llo del Colegio de Abogados e impreso el sello de--

la Notaría y al margen de todos los folios estam---

padas las iniciales de los otorgantes.----------------

---Es copia de su matriz, a que me remito; y para-

la Farmers Home Administration, la expido en Aguadi-

lla el mismo día de su otorgamiento, después de co-

rregida y anotada su saca.-------------------------

Inscrita a los folios 25-32
del tomo 21 de Aguadilla
fcas. #8660-8661 Insc. 6ª.
afecta a la hipoteca que
por este documento se
constituye. Aguadilla
Feb. 22, 1982.

*[firma]*

Registradora
Exenta

Inscrita (en cuanto digo
a la fca. C al folio 183 vto.
del tomo 190 de Aguadilla
fca #3444 Insc 9ª. La
fca. C afecta a una hi-
poteca a favor E.U.A
por $27,400.00 y a la que
por este documento se
constituye. Aguadilla
Feb. 22, 1982.

*[firma]*

Registradora
Exenta

Remised 5/27/82
*[firma]*

Form FmHA 427-1 PR
10/77

NUMBER TWENTY-NINE

VOLUNTARY MORTGAGE

In Aguadilla, Puerto Rico, on February eighteen, nineteen eighty-two.

IN MY PRESENCE

HECTOR REICHARD, Attorney and Notary Public for this island, with residence in Aguadilla, Puerto Rico and offices in Aguadilla, Puerto Rico,

THERE NOW APPEAR

The persons named in paragraph TWELFTH of this mortgage, hereinafter-called "mortgagor," and whose personal circumstances appear in said paragraph.

I attest to my personal acquaintance of the parties, as well as to their statements regarding their age, marital status, profession, and residence.

They assure me they are in full exercise of their civil rights and the free administration of their property, and they have, in my judgment, the necessary legal capacity to execute this document,

THEY DECLARE:

FIRST: That the mortgagor is the owner of the farm or farms described in paragraph ELEVENTH, with all corresponding rights and interests, referred to hereinafter as "the property."

SECOND: That the property mortgaged herein is subject to the liens specified in paragraph ELEVENTH.

THIRD: That the mortgagor is indebted to the United States of America, acting through the Farmers Home Administration, referred to hereinafter as "mortgagee," in connection with a loan or loans represented by one or more promissory notes or subrogation agreements, referred to hereinafter as "the note," whether one or more. The Government requires that additional monthly payments be made of one twelfth of the taxes, insurance

1

premiums, and other charges on the mortgaged property.

FOURTH:  It is understood that:

(One) The note represents a loan or loans to mortgagor in the principal amount specified herein, granted with the purpose and intention that the mortgagee may at any time surrender the note and insure the payment thereof pursuant to the Act of 1961, consolidating the Farmers Home Administration, or Title V of The Housing Act of 1949, as amended.

(Two) When payment of the note is guaranteed by the mortgagee, it may be transferred from time to time, and each holder of said note will in turn be considered the insured lender.

(Three) When payment of the note is insured by the mortgagee, the mortgagee will execute and deliver to the insured lender, along with the note, an insurance endorsement fully guaranteeing payment of the principal and interest on said note.

(Four) Whenever payment of the note is insured by the mortgagee, the mortgagee, by agreement with the insured lender, shall determine on the insurance endorsement the portion of the note's interest to be designated as "annual charges."

(Five) As a condition of the insurance of the note's payment, the holder will surrender all rights and remedies against the mortgagor and any others in connection with said loan, as well as any benefit of this mortgage, and will accept in its place the insurance benefits, and in the event that the mortgagor violates any agreement or stipulation contained herein, or in the note, or in any other supplementary agreement, the mortgagee may require the note to be endorsed to himself.

(Six) It is the purpose and intent of this mortgage that, among other things, whenever the note is held by the mortgagee, or in the event the mortgagee should transfer this mortgage without insuring the note, this mortgage shall guarantee payment of the note; but when

the note is held by an insured lender, this mortgage shall not guarantee payment of the note, nor shall it form any part of the debt represented thereby, but the note and said debt shall constitute an indemnity mortgage to insure the mortgagee against any loss under its insurance endorsement by reason of any default by the mortgagor.

FIFTH: That, in consideration of said loan and (a) whenever the note is held by the mortgagee, or in the event that the mortgagee should transfer this mortgage without insuring the note's payment, in guarantee of the amount of the note as specified in subparagraph (one) of paragraph NINTH, with interest at the rate stipulated, and to insure prompt payment of said note, and any renewals or extensions thereof, and any agreements contained therein, (b) whenever the note is held by an insured lender guaranteeing the amounts specified in subparagraph (two) of paragraph NINTH, in order to guarantee compliance with the mortgagor's agreement to indemnify and hold harmless the mortgagee against losses under its insurance endorsement by reason of any default by the mortgagor, and (c) in any event and at all times whatsoever, to guarantee the additional amounts specified in subparagraph (three) of paragraph NINTH, and to insure mortgagor's compliance with each and every agreement and stipulation herein, or in any supplementary agreement, mortgagor hereby grants to mortgagee a voluntary mortgage on the property described in paragraph ELEVENTH, together with all rights, interests, easements, inheritances, and appurtenances thereto belonging; all income, credits, profits, revenues; all improvements or personal property thereto attaching, at present or in the future, or which are reasonably necessary for the use thereof; all water, water rights, or shares in said rights; pertaining to the farms, and all payments at any time owing to mortgagor by virtue of the sale, lease, transfer, conveyance, or total or partial expropriation of, or injury to, any part thereof, or to their interests, it being understood that this mortgage will continue in full force and effect until all amounts specified in paragraph NINTH, with interest before and after maturity, until they have been paid in full. In case of foreclosure, the property will be responsible for the payment of the principal, interest thereon before and after maturity,

losses sustained by mortgagee as insurer of the note, taxes, insurance premiums, or any other disbursements or advances by mortgagee, to be paid by mortgagor with interest until all costs and expenses, including fees of mortgagee's attorneys, are paid to mortgagee, along with all extensions and renewals of said obligations, with interest, and all other charges and additional amounts specified in paragraph NINTH.

SIXTH: Mortgagor explicitly agrees to the following:

(One) To pay promptly to the mortgagee any debt herein guaranteed and to indemnify and hold mortgagee harmless against any loss under its insurance for payment of the note by reason of any default by mortgagor.  Whenever the note is held by an insured lender, mortgagor shall continue making payments on the note to mortgagee, as collection agent for the holder.

(Two) To pay the mortgagee an initial fee for inspection and appraisal and any delinquency charges, now or hereafter required by Farmers Home Administration regulations.

(Three) Whenever the note is held by an insured lender, any amount due and unpaid under the terms of the note, less the amount of the annual charge, may be paid by mortgagee to the holder of the note under the terms of the note and of the insurance endorsement referred to in the above paragraph FOURTH, the responsibility of the mortgagor.

Any amount due and unpaid under the terms of the note, whether it is held by mortgagee or by an insured lender, may be credited to the note by mortgagee, and shall thus constitute an advance by mortgagee, the responsibility of mortgagor.

Any advance by mortgagee as described in this subparagraph shall bear interest at the annual rate of six point six hundred twenty-five (6.625%), from the date on which payment was due until the date on which mortgagor pays the debt.

(Four) Whether or not the note is insured by mortgagee,

any and all amount advanced by mortgagee for insurance premiums, repairs, liens, or other claims for the protection of the mortgaged property, or for taxes or assessments or other similar charges due to mortgagor's failure to pay said charges, shall bear interest at the rate stated in the preceding subparagraph, from the date of the advance until mortgagor pays said advance.

(Five) All advances made by mortgagee as described in this mortgage, with interest, shall be immediately due and payable by mortgagor to mortgagee without need for advance notification in the place designated in the note, and shall be guaranteed by this mortgage. No advance by mortgagee shall relieve mortgagor from breach of his covenant to pay. Such advances, with interest, shall be repaid from the first payments received from mortgagor. In the absence of such advances, all payments verified by mortgagor may be applied to the note or to any other mortgagee debt guaranteed herein, in the order determined by mortgagee.

(Six) To use the amount of the loan indicated in the note solely for purposes authorized by mortgagee.

(Seven) To pay when due all taxes, special assessments, liens, and charges encumbering the property or the rights or interests of mortgagor under the terms of this mortgage.

(Eight) To obtain and maintain insurance against fire and other hazards as required by mortgagee on all existing buildings and property improvements, as well as on all future improvements. The insurance against fire and other hazards will be in the form, in the amount, and on the terms and conditions approved by mortgagee.

(Nine) To keep the property in good condition and to promptly make all necessary repairs in order to preserve the property; he will refrain from any activity, or from allowing any activity, which would result in the deterioration of the property; he will not remove nor demolish any building or improvement on the property; nor will he cut or remove wood from the farm, nor remove nor permit to be removed gravel, sand, oil, gas, coal, or other minerals, without mortgagee's consent, and will promptly carry out the repairs on the property

that mortgagee may request from time to time.  Mortgagor shall comply with soil conservation practices and farm and home management plans that mortgagee may prescribe from time to time.

(Ten) If this mortgage is granted for a loan to a farm owner as identified in Farmers Home Administration regulations, the mortgagor shall personally manage the property, on his own or through family labor, as a farm and for no other purpose, and shall not lease the farm, nor any part of it, unless mortgagee gives written consent to another method of operation or lease.

(Eleven) To submit information regarding income and expenses and any other information related to the management of the property, in the form and manner the mortgagee may require, and to comply with all laws, ordinances, and regulations affecting the property or its use.

(Twelve) Mortgagee, along with his agents and attorneys, shall at all times have the right to inspect and examine the property for the purpose of ascertaining whether security is deteriorating or being compromised, and if such inspection or examination shall disclose, in mortgagee's judgment, that security is in fact deteriorating or being compromised, this shall constitute a breach by mortgagor of this mortgage agreement.

(Thirteen) If any other person interferes with or contests mortgagor's rights of possession of the property, mortgagor shall immediately notify mortgagee of such action, and mortgagee may decide to institute the measures necessary to defend his interests, and any costs or expenditures incurred by mortgagee due to said measures will be added to mortgagor's debt, and will be guaranteed by this mortgage as additional credits under the clause regarding advances, expenditures and other payments.

(Fourteen) If at any time while this mortgage remains in effect, mortgagor shall abandon the property or voluntarily return it to mortgagee, mortgagee is hereby authorized and empowered to take possession of the property, to lease and administer it, and to collect the rents, benefits, and income from them,

6

and to apply them first to the costs of collection and administration, and secondly to the payment of the debt described by the note or any other debt to mortgagee herein guaranteed, in the order and manner to be determined by mortgagee.

(Fifteen) At any time that mortgagee determines that mortgagor may be able to obtain a loan from a production credit association, from a Federal Bank or other responsible source, whether cooperative or private, with a rate of interest and terms that are reasonable for loans of similar duration and purposes, then mortgagor, at mortgagee's request, will apply for and accept such a loan in a sufficient amount to pay the note and any other debt guaranteed herein, and to pay for the necessary shares in the cooperative agency with respect to such a loan.

(Sixteen) In the event of default in the discharge of any obligation guaranteed by this mortgage, or if mortgagor, or any other person included herein as a mortgagor, defaults in the payment of any amount, or violates or fails to comply with any clause, condition, stipulation, covenant, or agreement contained herein, or in any supplementary agreement, or if mortgagor dies or is declared incompetent, bankrupt, or insolvent, or makes a transfer for the benefit of creditors, or if the property or any part thereof or interest therein is sold, leased, transferred, conveyed, or encumbered, voluntarily or otherwise, without mortgagee's written consent, then mortgagee is irrevocably authorized and empowered, at his discretion and without notice:  (One) to declare all debt left unpaid under the terms of this note, or any other debt to mortgagee guaranteed herein, immediately due and payable, and to proceed to foreclosure in accordance with the law and the provisions thereof; (Two) to incur and pay reasonable expenses for the repair and maintenance of the property and any expenses or obligations that mortgagor failed to pay as agreed in this mortgage, including taxes, assessments, insurance premiums, and any other expenses or costs for the protection and preservation of the property and of this mortgage, or for violation of any provision of this mortgage; and (Three) to request the protection of the law.

(Seventeen) Mortgagor shall pay, or shall reimburse mortgagee for all necessary expenses for the fulfillment of the covenants and agreements of this mortgage, and of the note and

of any supplementary agreement, including the costs of surveying, title search, court costs, deed recording, and attorneys' fees.

(Eighteen) Without in any way affecting mortgagee's right to require and enforce at any subsequent date the covenants, agreements, or obligations herein set forth, or other similar agreements, and without affecting the liability of any person for payment of the note or any other debt herein guaranteed, and without affecting the lien created upon the property or the priority of said lien, mortgagee is hereby authorized and empowered at any time: (one) to waive the performance of any agreement or obligation contained herein, or in the note, or in any supplementary agreement; (two) to negotiate with mortgagor or to grant to mortgagor any indulgence or forbearance or extension of the time for payment of the note (with the consent of the note's holder when it is held by an insured lender), or for payment of any debt to the mortgagee herein guaranteed; or (three) to execute and deliver partial releases of any part of the mortgaged property described herein, or to grant deferment or postponement of this mortgage to any other lien on the property.

(Nineteen) All rights, title, and interest in or on this mortgage, including but not limited to the power to grant consent, partial releases, subordination, and revocation, shall be vested solely and exclusively in the mortgagee, and no insured lender shall have any right, title, or interest in or on this mortgage and any benefits herein contained.

(Twenty) Default on this mortgage shall constitute default on any other mortgage, loan, or real estate mortgage held or insured by mortgagee, and executed or assumed by mortgagor; and default on any such instrument shall constitute default on this mortgage.

(Twenty-One) All notices to be given under the terms of this mortgage shall be sent by certified mail unless otherwise required by law, and shall be addressed until some other address is designated in a notice provided to that effect, in the case of mortgagee, to Farmers Home Administration, United States Department of Agriculture, San Juan, Puerto Rico; and in the case of mortgagor, to him at his residence address

as stated below.

(Twenty-Two) Mortgagor hereby grants to mortgagee the amount of any judgment obtained through forced expropriation for public use of the property or any part thereof, as well as the amount of any judgment for damages to the property. Mortgagee will apply the amount so received to pay costs incurred in collection, and the balance will apply to payment of the note, and any indebtedness to mortgagee guaranteed by this mortgage, and if any amount then remains, will pay such amount to mortgagor.

SEVENTH: That for the purpose of the first auction to be held in case of foreclosure of this mortgage, in accordance with mortgage law, as amended, mortgagor does hereby appraise the mortgaged properties in the amount of SEVENTY FOUR THOUSAND ($74,000.00).

EIGHTH: Mortgagor hereby waives the requirement of law and agrees to be considered in default with no need for prior notification by mortgagee. This mortgage is subject to the regulations of the Farmers Home Administration now in effect, and to future regulations not inconsistent with the provisions of this mortgage, as well as to the laws of the United States Congress authorizing and insuring the aforementioned loan.

NINTH: The amounts guaranteed by this mortgage are as follows:
One. Whenever the note referred to in paragraph THIRD of this mortgage is held by mortgagee, or in the event mortgagee should transfer this mortgage without insuring the note: SEVENTY FOUR THOUSAND ($74,000.00), the note's principal, together with interest as stipulated at the annual rate of SIX point SIX HUNDRED TWENTY-FIVE percent (6.625%).

Two. Whenever the note is held by an insured lender:
(A)  SEVENTY FOUR THOUSAND ($74,000.00),

to compensate mortgagee for advances to the insured lender because of mortgagor's failure to pay the installments as specified in the note, with interest as indicated in paragraph SIXTH, subparagraph three;

(B) ONE HUNDRED ELEVEN THOUSAND DOLLARS ($111,000.00), to further compensate mortgagee against any losses suffered under its insurance for payment of the note;

Three. In any event and at any time:
(A) TWENTY-NINE THOUSAND SIX HUNDRED DOLLARS ($29,600.00) for interest upon default;
(B) FOURTEEN THOUSAND EIGHT HUNDRED DOLLARS ($14,800.00) for taxes, insurance, and other advances for the preservation and protection of this mortgage, with interest at the rate stipulated in paragraph SIXTH, subparagraph three;
(C) SEVEN THOUSAND FOUR HUNDRED ($7,400.00) for court costs, expenses, and attorneys' fees in case of foreclosure;
(D) SEVEN THOUSAND FOUR HUNDRED ($7,400.00) for court costs and expenses incurred by mortgagee in proceedings to defend his interests against any other person interfering with or contesting the mortgagor's right of possession of the property, as provided in paragraph SIXTH, subparagraph thirteen.

TENTH: That the note referred to in paragraph THIRD of this mortgage is described as follows:
Promissory note executed in case number sixty-three dash twenty dash five hundred eighty-four dash zero seventy-two dash eight hundred sixty-five (63-20-584-072-865) dated February, eighteen eighty-two,

in the amount of SEVENTY FOUR THOUSAND DOLLARS ($74,000.00) of principal, plus interest on the unpaid balance at the annual rate of six point six hundred twenty-five percent (6.625%), until the principal is satisfied totally according to the terms, conditions and stipulations set forth in said note and as agreed between the borrower and the government: except for the final payment of the entire debt represented herein, which, if not satisfied sooner, will become due and payable FORTY years from the date of this note.

Said note has been executed as evidence of a loan made by the Government to the Borrower, pursuant to the law of the US Congress known as "Consolidated Farmers Home Administration Act of 1961," or pursuant to the Housing Act of 1949, both as amended, and is subject to present Farmers Home Administration regulations, and to future regulations which are not inconsistent with these laws, of which description, I, the Authorizing Notary, BEAR WITNESS.

ELEVENTH: The property referred to in the FIRST paragraph herein is described as follows:

A. RURAL:  Plot of land located in Barrio Guerrero de Aguadilla, Puerto Rico, with an area of EIGHTEEN *CUERDAS** AND SEVENY-ONE CENTIMES, equivalent to seven hectares, thirty-one areas, forty-four centiares and fifty-six miliares. Its boundaries are: to the North, with property formerly belonging to Maria Rodriguez, today belonging to Emilio Cereso heirs; to the South, property formerly belonging to Felina Rodriguez, today belonging to Carlos Cordero; to the East, with property formerly belonging to Francisco Bravo, today to Carlos Cordero; and to the West, with Rosario Rodriguez before, Rafael Feliciano heirs after, and today with Maria del Rosario Bravo, Francisco Crespo, Candido Cortes and Juan Lopez.

B. RURAL: Plot of land in Barrio Guerrero de Aguadilla, Puerto Rico, with a surface area of FIVE *CUERDAS*, equivalent to one hectare, ninety-six areas, fifty-one centiares, and ninety-five miliares. Its boundaries are: To the NORTH, with Eduardo Morales before, today with Benito Cortes; to the SOUTH, with Agustin Rodriguez before, today with Juan Lopez; to the EAST, with Isolina Rodriguez; and to the WEST, with a local road.

The farm described under letter "A" is recorded on page twenty-two (22), volume two hundred eleven (211), farm number eight thousand six hundred sixty.

The farm described under letter "B" is recorded on page twenty

---

*Translator's note: A *cuerda* is equivalent to 0.971 acres, 3,930.39 meters squared, and 42,291 squared feet.

nine (29), volume two hundred eleven (211), farm number eight thousand six hundred sixty-one (8661).

C. RURAL: Farm located in Barrio Guerrero de Aguadilla, Puerto Rico, with a surface area of TEN CUERDAS, equivalent to three hectares, ninety-three areas and four centiares. Its boundaries are: to the NORTH, with Maria Rosario Rodriguez; to the SOUTH, with the farm to be determined; to the EAST, with a road that separates the farm from property belonging to Felina Rodriguez, and to the WEST, with public road; in addition, to the SOUTH, with Ramon Rodriguez Lopez heirs.

It was acquired through purchase from Edwin Morales Alera and wife Marta Feliciano Valentin, pursuant to deed number two hundred eighty-five executed on November twenty-seven, nineteen seventy-six before the Notary Eric Millan Muñiz.

Recorded on page one eighty-two, volume one hundred ninety in Aguadilla, farm number three thousand four hundred forty-four.

This farm has a one-story residential construction, which is made of concrete, measures forty-seven feet by thirty-one feet and six inches, and is located in Barrio Guerrero, road four hundred sixty-six, kilometer three, Aguadilla, Puerto Rico.

It is encumbered by a first mortgage to the order of the United States of America in the amount of TWENTY SEVEN THOUSAND FOUR HUNDRED DOLLARS ($27,400.00).

The borrower acquired the above-mentioned farm through purchase from Mr. Edwin Morales Alera and wife Maria Feliciano. The farms described under letters A and B were acquired through purchase, in accordance to deeds number twenty-eight (28) executed on February eighteen, nineteen eighty-two in the city of Aguadilla, before the Notary Hector Reichard; and the farm described under letter C, pursuant to deed number two hundred eighty-five dated on November twenty-seven, nineteen seventy-six before Eric Milan. The recording data of the above-mentioned properties appears after each description thereof.

TWELFTH: That, appearing herein as mortgagees are Wilfredo Lopez Calcerrada and wife Awilda Ramos Vazquez, both of legal age, property owners and residents of Adjuntas, Puerto Rico; whose mailing address is PO BOX 38, San Antonio, Puerto Rico, zip code zero zero seven hundred fifty-two.

THIRTEENTH: The loan amount consigned herein was or will be used for agricultural purposes and construction and/ or repairs and / or improvements of the facilities in the described farm.

FOURTEENTH: The borrower will personally occupy and use any structure that is constructed, improved, or purchased with the proceeds of the loan herein guaranteed, and shall not lease or use said structure for other purposes, unless the Government gives consent in writing. Violation of this clause, as well as violation of any other agreement or clause contained herein, will cause the debt to become due as if the whole term had elapsed, and the Government may declare the loan due and payable, and may proceed to foreclosure of the mortgage.

FIFTEENTH: This mortgage extends expressly to any constructions or buildings currently existing on the aforementioned farm(s),

and to any improvements, construction or building constructed on said property while this mortgage loan furnished to the order of the Government is in effect, as verified by the current mortgagors or their assignees or trustees.

SIXTEENTH: Mortgagor hereby waives jointly and severally for himself and on behalf of his heirs, trustees, successors, or representatives, in favor of mortgagee (Farmers Home Administration), any present or future Homestead right that he may have on the property described in paragraph eleven, and in the buildings thereon, or which may be constructed in the future; this waiver being permitted in favor of the Farmers Home Administration by Law Number Thirteen (13) of May twenty-eight (28), nineteen sixty-nine (1969) (31 L.P.R.A. Sec. 1851).

SEVENTEENTH: Both mortgagor and mortgagee agree in that any stove, oven, heater that was purchased or partially or totally financed with proceeds of the loan herein secured, it will be considered as part of the property encumbered by this mortgage.

EIGHTEENTH: The appearing parties hereby also state that since this a loan for agricultural purposes, they have agreed in not distributing the liability between the farms, therefore each one will be responsible individually, I mean, joint and severally to pay the principal, interest, costs and other credits herein guaranteed, pursuant to article one hundred nineteen of the Mortgage Law, as amended, by Law number seventy-nine issued on June twenty-five, nineteen sixty-nine.

NINETEENTH: As this involves a Limited Resources loan, as indicated in the promissory note, the Government may change the interest rate, in accordance with Farmers Home Administration regulations.

## ACCEPTANCE

So they say and approve the parties this deed before me after having waived the presence of witnesses.

After this deed was read aloud by me to the parties, after having told them about the right they had to do it themselves and which they waived, they ratify its contents, place their initials on each of the folios of this deed, and sign.

And I, the Notary: BEAR WITNESS to my personal acquaintance of the appearing parties and to their statements regarding their aforementioned personal information, of having given the pertinent legal warnings, and to everything contained in this public instrument.

Signed: Wilfredo Lopez Calcerrada, Awilda Ramos Vazquez. Signed, stamped, sealed and endorsed: Hector Reichard. There is a cancelled seal of the Bar Association and imprinted the seal of the Notary. The initials of all the parties appear in the margin of every page herein.

This is a true and exact copy of the original deed, and for delivery to the Farmers Home Administration, I issue this certified copy the same day of its execution after being amended and registered.

[Signature]

Recorded on pages 25-32, volume 211 of Aguadilla. Farms numbers 8660-8661, 6th entry. Encumbered by the mortgage furnished by this document.
Aguadilla, February 22, 1982

[Signature]
Property Recorder
Exempt

Recorded (with regard), I mean, the farm described under letter C, on page 183, volume 190 of Aguadilla. Farm # 3444, 9th entry. The farm is encumbered by a mortgage to the order of U.S.A. in the amount of $27,400.00, and by the mortgage furnished by this document.
Aguadilla 22, 1982

[Signature]
Property Recorder
Exempt

## CERTIFICATE

I hereby certify that the attached Voluntary Mortgage# 29 is a true and accurate translation to the best of my knowledge, ability and belief. I am experienced and competent to translate from Spanish into English.

DATED this 4th day of March of 2007.

Nicole Harris
*Federal and State Certified Translator*

WITNESS my hand and official seal hereto affixed this 4th day of March of 2007.

Signature

Print Name: Rosa Capdevielle
Notary Public in and for the State of Washington
My appointment expires: 02/01/2010

[Notary Seal: ROSA CAPDEVIELLE — COMMISSION EXP. — NOTARY PUBLIC — FEB. 1, 2010 — STATE OF WASHINGTON]

# TITLE SEARCH

**CLIENT: WILFREDO LÓPEZ CALCERRADA**     **REF: 1521.280**
                                          **BY: TAIMARY ESCALONA**

**PROPERTY NUMBER:** 8,660, recorded at page 22 of volume 211 of Aguadilla, Registry of the Property of Puerto Rico, section of Aguadilla.

**DESCRIPTION: (As it is recorded in the Spanish language)**

**RÚSTICA:** Radicada en el barrio Guerrero de Aguadilla, Puerto Rico, compuesta originalmente de **20.61 cuerdas, reducida en la actualidad a dieciocho cuerdas con sesenta y un céntimos de terreno, equivalentes a siete hectáreas, treinta y una áreas, cuarenta y cuatro centiáreas y cincuenta y seis miliáreas,** en lindes al **NORTE**, con María Rodríguez antes, hoy la Sucesión de Emilio Cerezo; al **SUR**, con Felina Rodríguez antes, hoy Carlos Cordero; al **ESTE**, con Francisco Bravo antes, hoy Carlos Cordero; y al **OESTE**, antes Rosario Rodríguez, después Sucesión de Rafael Feliciano y hoy con María del Rosario Bravo, Francisco Crespo, Cándido Cortés y Juan López.

**TITLE:**

This property is registered in favor of WILFREDO LÓPEZ CALCERRADA and his wife AWILDA RAMOS VÁZQUEZ, this property and other, who acquired it by purchase from Edwin Morales Alers and his wife Marta Feliciano, at a price of $70,000.00, responding this property by $55,000.00, pursuant to deed #28, executed in Aguadilla, Puerto Rico, on February 18, 1982, before Héctor Reichard Notary Public, recorded at overleaf of page 24 of volume 211 of Aguadilla, property number 8,660, 5th inscription.
**Presented on February 19, 1982**
**Recorded on February 22, 1982**

**LIENS AND ENCUMBRANCES:**
I.   By reason of its origin this property is free of liens and encumbrances

II.  By reason of itself this property is encumbered by the following:

1.  **MORTGAGE:** Constituted by Wilfredo López Calcerrada and his wife Awilda Ramos Vázquez, over this property and other, in favor of United States of America, in the original principal amount of $74,000.00, with 6.625% annual interests, due on 40 years, constituted by deed #29, executed in Aguadilla, Puerto Rico, on July 18, 1982, before Héctor Reichard Notary Public, recorded at page 25 of volume 211 of Aguadilla, property number 8,660, 6th and last inscription.
    **Presented on February 19, 1982**
    **Recorded on February 22, 1982**

**REVIEWED:**

Federal Attachments, Commonwealth of Puerto Rico Tax Liens, Judgments and Daily Log up to January 15th, 2020.

*NOTICE: The Sections of the Property Registry have been computerized by the new system identified as Karibe, through which the historical volumes containing the data related to the inscribed properties and with the documents presented and pending registration were digitized. Since April 25, 2016, the Department of Justice discontinued the Tool-Kit and Agora System in most of the Sections of the Registry, which was used to search for documents submitted and pending registration and preparation of title search and other documents. There is also a delay in the entry of information to the System to this date. In addition to this, the Federal and State Seizures are now entered and electronically provided by the Central Office of the Land Registry in the Department of Justice, without being able to corroborate the control books and with many errors which makes the location impossible. We are not responsible for errors that may result in this title search due to errors and/or omissions of the Registry and/or its employees, when entering the data in the system.*

**EAGLE TITLE AND OTHER SERVICES, INC.**

*Authorized signature*

ESTUDIOS DE TITULO
SEGUROS DE TITULO

P.O. BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748.1130 / FAX 8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.



Eagle Title & Other Services, Inc.

mcr/mv/**F**

I, Elías Díaz Bermúdez, of legal age, single and neighbor of San Juan, Puerto Rico, under solemn oath declare:

1. That my name and personal circumstances are the above mentioned.

2. That on January 15th, 2020, I examined the books and files of The Property Registry of Puerto Rico and prepared the attached title study which makes part of this affidavit.

3. That the attached title study correctly represents in all its parts the status of the above described property in The Property Registry of Puerto Rico.

I, the undersigned, hereby swear that the facts herein stated are true.

In Guaynabo, Puerto Rico, this 15 day of October of 2020.

_____
Elías Díaz Bermúdez

AFFIDAVIT NUMBER 4,328.

Sworn and subscribed to before me by Elías Díaz Bermúdez of the aforementioned personal circumstances, whom I personally know.

In Guaynabo, Puerto Rico, this 15 day of October of 2020.

NOTARY PUBLIC

RECIBO

9397
09/24/2020
$5.00
Sello de Asistencia Legal
80093-2020-0924-9317 2189

# TITLE SEARCH

ESTUDIOS DE TITULO
SEGUROS DE TITULO

P.O. BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748.1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

**CLIENT: WILFREDO LÓPEZ CALCERRADA**          **REF:** 1521.280
                                               **BY: TAIMARY ESCALONA**

**PROPERTY NUMBER:** 8,661, recorded at page 29 of volume 211 of Aguadilla, Registry of the Property of Puerto Rico, section of Aguadilla.

**DESCRIPTION: (As it is recorded in the Spanish language)**

**RÚSTICA:** Radicada en el barrio Guerrero de Aguadilla, Puerto Rico, compuesta de **cinco cuerdas de terreno, equivalentes a una hectárea, noventa y seis áreas, cincuenta y una centiáreas y noventa y cinco miliáreas**, en lindes al **NORTE**, con Eduardo Morales, antes, hoy con Benito Cortés; al **SUR**, con Agustín Rodríguez, antes, hoy con Juan López; al **ESTE**, con Isolina Rodríguez; y al **OESTE**, con un camino vecinal.

**TITLE:**

This property is registered in favor of WILFREDO LÓPEZ CALCERRADA and his wife AWILDA RAMOS VÁZQUEZ, this property and other, who acquired it by purchase from Edwin Morales Alers and his wife Marta Feliciano, at a price of $70,000.00, responding this property by $15,000.00, pursuant to deed #28, executed in Aguadilla, Puerto Rico, on February 18, 1982, before Héctor Reichard Notary Public, recorded at page 32 of volume 211 of Aguadilla, property number 8,661, 5th inscription.
**Presented on February 19, 1982**
**Recorded on February 22, 1982**

**LIENS AND ENCUMBRANCES:**

I.   By reason of its origin this property is free of liens and encumbrances

II.  By reason of itself this property is encumbered by the following:

1.   **MORTGAGE:** Constituted by Wilfredo López Calcerrada and his wife Awilda Ramos Vázquez, over this property and other, in favor of United States of America, in the original principal amount of $74,000.00, with 6.625% annual interests, due on 40 years, constituted by deed #29, executed in Aguadilla, Puerto Rico, on July 18, 1982, before Héctor Reichard Notary Public, recorded at page 32 of volume 211 of Aguadilla, property number 8,661, 6th inscription.
     **Presented on February 19, 1982**
     **Recorded on February 22, 1982**

**OBSERVATION:**

1.   **FEDERAL TAX LIEN:** Entry 2016-003153-FED, Karibe System, notification number 201486016, against Wilfredo López/Colors Paint, Social Security number xxx-xx-8428, in the amount of $26,400.79, dated March 23, 2016. **There is no warranty about the identity of the owner and the foreclosure subject being the same person.**

2.   **FEDERAL TAX LIEN:** Entry 2016-004741-FED, Karibe System, notification number 210527016, against Wilfredo López/Colors Paint, Social Security number xxx-xx-8428, in the amount of $2,004.48, dated May 11, 2016. **There is no warranty about the identity of the owner and the foreclosure subject being the same person.**

3.   **FEDERAL TAX LIEN:** Entry 2018-009498-FED, Karibe System, notification number 329350218, against Wilfredo López/Colors Paint, Social Security number xxx-xx-8428, in the amount of $177,987.17, dated November 2, 2018. **There is no warranty about the identity of the owner and the foreclosure subject being the same person.**

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.


Eagle Title & Other Services, Inc.

PAGE #2
PROPERTY #8,661

REVIEWED:

Federal Attachments, Commonwealth of Puerto Rico Tax Liens, Judgments and Daily Log up to January 15th, 2020.

*NOTICE: The Sections of the Property Registry have been computerized by the new system identified as Karibe, through which the historical volumes containing the data related to the inscribed properties and with the documents presented and pending registration were digitized. Since April 25, 2016, the Department of Justice discontinued the Tool-Kit and Agora System in most of the Sections of the Registry, which was used to search for documents submitted and pending registration and preparation of title search and other documents. There is also a delay in the entry of information to the System to this date. In addition to this, the Federal and State Seizures are now entered and electronically provided by the Central Office of the Land Registry in the Department of Justice, without being able to corroborate the control books and with many errors which makes the location impossible. We are not responsible for errors that may result in this title search due to errors and/or omissions of the Registry and/or its employees, when entering the data in the system.*

**EAGLE TITLE AND OTHER SERVICES, INC.**

*Authorized signature*

mcr/mv/**F**

I, Elías Díaz Bermúdez, of legal age, single and neighbor of San Juan, Puerto Rico, under solemn oath declare:

    1. That my name and personal circumstances are the above mentioned.

    2. That on January 15th, 2020, I examined the books and files of The Property Registry of Puerto Rico and prepared the attached title study which makes part of this affidavit.

    3. That the attached title study correctly represents in all its parts the status of the above described property in The Property Registry of Puerto Rico.

I, the undersigned, hereby swear that the facts herein stated are true.

In Guaynabo, Puerto Rico, this ___15___ day of ___October___ of 2020.

_____
Elías Díaz Bermúdez

AFFIDAVIT NUMBER 4,329

Sworn and subscribed to before me by Elías Díaz Bermúdez of the aforementioned personal circumstances, whom I personally know.

In Guaynabo, Puerto Rico, this __15__ day of __October__ of 2020.

NOTARY PUBLIC





ESTUDIOS DE TITULO
SEGUROS DE TITULO

P.O. BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748.1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.

Eagle Title & Other Services, Inc.

Exhibit 5

## UNITED STATES DEPARTMENT OF AGRICULTURE
## FARM SERVICE AGENCY

654 Muñoz Rivera Avenue
654 Plaza Suite #829
San Juan, PR 00918

Borrower:     Lopez Calcerrrada, Wilfredo          Case No:     63-020-2865

### *CERTIFICATION OF INDEBTEDNESS*

I, Jean P. Tilen Napoli, of legal age, married, a resident of Patillas, Puerto Rico in my official capacity as
Loan Resolution Task Force Contractor of the *Farm Service Agency*, United States Department of Agriculture (USDA), state that:

- The borrower's indebtedness is as shown in the following Statement of Account, according
  to information obtained from all available records at the USDA-Farm Service Agency:

    **Statement of Account as of      September 16, 2020**

| Loan Number | 41-02 |
|---|---|
| Original Note Amount | $74,000.00 |
| Original Note Date | 2/18/1982 |
| Date of Last Payment | 02/23/2015   Offset |
| Principal Balance | $74,000.00 |
| Unpaid Interest | $136,010.15 |
| Misc. Charges | $0.00 |
| Total Balance | $210,010.15 |
| Daily Interest Accrual | $                13.4315 |
| Amount Delinquent | $206,943.01 |
| Years Delinquent | 35 |

- The information in the above Statement of Account in affiant's opinion is a true and correct statement
  of the aforementioned account and to this date remains due and unpaid.

- The defendant is neither a minor, nor incompetent, nor in the military service of the
  United States of America.

- The above information is true and correct to the best of my knowledge and belief, and is made under
  penalty of perjury as allowed by 28 U.S.C. 1746.

Jean P. Tilen Napoli
LRTF Contractor
September 16, 2020



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Exhibit 6

SSN:             XXX-XX-1865

Birth Date:

Last Name:       LOPEZ CALCERRADA

First Name:      WILFREDO

Middle Name:

Status As Of:    Oct-14-2020

Certificate ID:  0TYMQR76JCGPCNG

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.



## Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-8288 |
| Birth Date: | |
| Last Name: | RAMOS VAZQUEZ |
| First Name: | AWILDA |
| Middle Name: | |
| Status As Of: | Oct-14-2020 |
| Certificate ID: | SNCKTTDGLGDPXBX |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

### District of Puerto Rico

| | |
|---|---|
| United States of America, acting through the United States Department of Agriculture <br><br> *Plaintiff(s)* <br><br> v. <br><br> WILFREDO LÓPEZ CALCERRADA, et als. <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. <br><br> FORECLOSURE OF MORTGAGE |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   AWILDA RAMOS VÁZQUEZ
St. Rd. 466, Km. 3.1
Guerrero Wd.
Aguadilla, P.R. 00603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

JUAN CARLOS FORTUÑO FAS
P.O. BOX 3908
GUAYNABO PR 00970

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*MARIA ANTONGIORGI-JORDAN, ESQ.*
*CLERK OF COURT*

Date: _____     _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

## District of Puerto Rico

| | | |
|---|---|---|
| United States of America,<br>acting through the<br>United States Department of Agriculture | ) ) ) ) | |
| _____<br>*Plaintiff(s)* | ) ) ) | |
| v. | ) ) | Civil Action No. |
| WILFREDO LÓPEZ CALCERRADA, et als. | ) ) | FORECLOSURE OF MORTGAGE |
| _____<br>*Defendant(s)* | ) ) ) ) | |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Conjugal Partnership López-Ramos
St. Rd. 466, Km. 3.1
Guerrero Wd.
Aguadilla, P.R. 00603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

JUAN CARLOS FORTUÑO FAS
P.O. BOX 3908
GUAYNABO PR 00970

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*MARIA ANTONGIORGI-JORDAN, ESQ.*
*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0_____ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

## District of Puerto Rico

| | | |
|---|---|---|
| United States of America,<br>acting through the<br>United States Department of Agriculture | ) ) ) ) | |
| _____<br>*Plaintiff(s)* | ) ) | Civil Action No. |
| v. | ) ) | FORECLOSURE OF MORTGAGE |
| WILFREDO LÓPEZ CALCERRADA, et als. | ) ) ) | |
| _____<br>*Defendant(s)* | ) ) | |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  UNITED STATES OF AMERICA
c/o United States Attorney
Suite 1201, Torre Chardón, 350 Chardón Street
San Juan, Puerto Rico 00918

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

JUAN CARLOS FORTUÑO FAS
P.O. BOX 3908
GUAYNABO PR 00970

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*MARIA ANTONGIORGI-JORDAN, ESQ.*
*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Puerto Rico

| | | |
|---|---|---|
| United States of America, acting through the United States Department of Agriculture _____ *Plaintiff(s)* v. WILFREDO LÓPEZ CALCERRADA, et als. _____ *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. FORECLOSURE OF MORTGAGE |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  WILFREDO LÓPEZ CALCERRADA
St. Rd. 466, Km. 3.1
Guerrero Wd.
Aguadilla, P.R. 00603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

JUAN CARLOS FORTUÑO FAS
P.O. BOX 3908
GUAYNABO PR 00970

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*MARIA ANTONGIORGI-JORDAN, ESQ.*
*CLERK OF COURT*

Date: _____        _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

Attorney Name (Last, First, MI):

USDC-PR Bar Number:

Email Address:

1.   Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

   Plaintiff:

   Defendant:

2.   Indicate the category to which this case belongs:

   ☐ Ordinary Civil Case

   ☐ Social Security

   ☐ Banking

   ☐ Injunction

3.   Indicate the title and number of related cases (if any).

4.   Has a prior action between the same parties and based on the same claim ever been filed before this Court?

   ☐ Yes

   ☐ No

5.   Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

   ☐ Yes

   ☐ No

6.   Does this case question the constitutionality of a state statute?  (See, Fed.R.Civ. P. 24)

   ☐ Yes

   ☐ No

Date Submitted:

rev. Dec. 2009

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Juan Carlos Fortuño Fas
PO Box 9300
San Juan, PR 00908, tel. 787-751-5290

## DEFENDANTS

Wilfredo Lopez Calcerrada, Awilda Ramos Vázquez and the conjugal partnership composed between them

County of Residence of First Listed Defendant    Aguadilla, Puerto Rico
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Consolidated Farm and Development Act, 7 USC 1921, et seq., and 28 USC 1345
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
206,343.55

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____